IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM H. AGNEW, et al.,      :    CIVIL ACTION
                               :    NO. 10-MC-58
        Petitioners,           :
                               :
    v.                         :
                               :
E*TRADE SECURITIES LLC,        :
                               :
        Respondent.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      SEPTEMBER 8, 2011


I.    **INTRODUCTION**

On April 4, 2010, pro se Petitioners William H. Agnew and Bernadine R. Agnew ("Petitioners" or "Agnews") initiated this action against Respondent E*Trade Securities, LLC ("Respondent" or "E*Trade") by filing a motion to vacate a Financial Industry Regulatory Authority ("FINRA") award, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10-11. On July 7, 2011, the Court entered default against E*Trade shortly after service upon E*Trade was effectuated.

E*Trade brought a Motion to Set Aside Default. For the reasons set forth below, the Court will grant E*Trade's motion, set aside the entry of default, impose costs and expenses of

-1-

service upon E*Trade and impose a $10,000 sanction upon E*Trade.

## II.  FINDINGS OF FACT

On April 4, 2010, pro se Petitioners initiated this action against E*Trade by filing a motion to vacate a FINRA award, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10-11, seeking to vacate the award that denied their claims against E*Trade for over $26,000[1] in damages and awarded $4,050 to E*Trade for costs of arbitration.  Petitioners also seek a refund of the $600 filing fee paid to the Arbitration Panel.

### A. The Parties

E*Trade is a holding company, the major business of which is an online discount stock brokerage service for self-directed investors where investors can buy and sell securities such as stocks, bonds, options, mutual funds, and exchange-traded funds via electronic trading platforms or by phone via E*Trade Mobile Pro.  E*Trade advertises that it is an "online leader" and that "[w]hether you're new to online investing, an experienced investor, or an active trader, E*Trade has everything you need to succeed."  Indeed, E*Trade advertises

---

[1]    This amount is based upon the facts alleged in Petitioners' petition where they allege that E*Trade erroneously sold 30,000 of their Fulton Financial shares and failed to purchase 3500 shares of Susquehanna Bancshares, Inc.

that it has all information available so that individuals new to investing, can use E*Trade's services, such as "independent research," "online tools," and instructional videos to invest. E*Trade also advertises its "five-star customer service" that is provided for its 4.3 million customer accounts.  (See E*Trade's Homepage, https://us.etrade.com/e/t/home, last visited August 26, 2011.)  Petitioners maintained an account with E*Trade for stock purchases.

        B. Petitioners' Claim

        Petitioners' claims against Respondent are as follows. On February 4, 2010, Petitioners' two claims are (1) that E*Trade did not sell Petitioners' stock (for Fulton Financial) at "a price as favorable as possible under prevailing market conditions," in violation of NASD's Best Execution Rule 2320; and (2) that E*Trade failed to fill an Order to purchase Susquehanna Bancshares, Inc.-Pa. shares as directed by Petitioners.  (See Mot. Vacate Arb. Award ¶¶ 7, 8.)

        On February 24, 2008, Petitioners filed a Statement of Claims with FINRA, by which each party agreed to submit any controversies to arbitration.  The Arbitration Panel ("Panel") consisted of three arbitrators and entered an award on February 4, 2010, denying both of Petitioners' claims.  See id. ¶ 3. Petitioners now seek to vacate that award on the grounds that the

Panel improperly: (1) assessed a $600 session fee against
Petitioners; (2) refused an evidentiary hearing; and (3)
prejudiced Petitioners by violating their procedural due process
rights.  See id. ¶¶ 32-39. On April 4, 2010, the Petitioners
filed a Motion to Vacate FINRA Arbitration Award with this Court
("Petition").  (Doc. no. 1.)


    C. Petitioners' Efforts in Attempting to Effectuate
       Service

     On April 2, 2010 a copy of the Petition and Certificate
of Service were sent by Petitioners to John Bersin, Esq., the
attorney that represented E*Trade in the Arbitration with
Petitioners. (Doc. No. 11, Ex. A & A-1.)  On April 5, 2010,
Bersin sent Petitioners a letter acknowledging he had received
the Petition but stated:

> I am in receipt of your cover letter and [the
> Petition].  My copy of this document does not bear an
> index number, judge's name or any local rules.  Please
> provide this information, at a minimum.  This letter
> does not constitute a waiver or acceptance of service.

(Doc. No. 11, Ex. B.)  Shortly thereafter, Petitioners responded
by letter, advising Bersin of the Docket Number of this case in
the Eastern District of Pennsylvania and the name of the Judge
assigned to the case.  Having received no response, on May 24,
2010, Petitioners wrote a letter to the Court requesting advice
as E*Trade had not answered nor had Bersin or any other attorney
made an appearance on behalf of E*Trade. (Doc. No. 11, Ex. C.)

- 4 -

On June 21, 2010, Petitioners called E*Trade's office in Menlo Park, California (Bersin's office) and attempted to obtain the identity of individuals that could be served, but were unsuccessful.  On June 24, 2010, Petitioners sent Bersin a letter requesting the name and address of two officers of E*Trade that could waive personal service or be served.  On June 30, 2010, Petitioners sent a letter to the Court stating that once Bersin responds and identifies the individuals, Petitioners would promptly serve them.  Neither Bersin, nor any other representative for E*Trade, ever answered the Agnews' letter.

On June 30, 2010, Tim Nelson, Esq. of Seyfarth & Shaw's Sacramento office, E*Trade's national counsel, called Petitioners and said that upon receiving the appropriate forms to waive service on behalf of E*Trade, those forms would be sent to the appropriate person at E*Trade for signing.  On July 1, 2010, the Agnews forwarded the letter from Nelson to the Court.

On July 2, 2010, William M. Connor, Esq. entered his appearance as counsel for E*Trade.  On July 9, 2010, the Court entered an Order granting E*Trade's Motions to admit Kurt A. Kappes, Esq. and James D. McNairy, Esq., as counsel pro hac vice for E*Trade.  On July 16, 2010, the Petitioners sent Connor a copy of the Petition and all appropriate waiver documents, and certified the mailing of this package.

D. <u>The Dismissal of Petitioners' Claim</u>

On June 2, 2010, the Court issued a Rule to Show Cause for Petitioners to show why service had not been effectuated in accordance with Rule 4 of the Federal Rules of Civil Procedure, footnoting that Petitioners' original method did not satisfy Rule 4.  The hearing on the Rule to Show Cause was held on July 19, 2010.  (Doc. no. 6.)  That day, the Court, dismissed Petitioners' case for failing to respond to the Rule to Show Cause or to appear at the July 19, 2010 hearing, giving them 10 days to file a motion for reconsideration.  (Doc. no. 10.)  On July 27, 2010, Petitioners filed a Motion for Reconsideration.  (Doc. no. 11.)

E*Trade responded in opposition to Petitioners' Motion for Reconsideration, on August 10, 2010, arguing that Petitioners case should remain dismissed as they have failed to effectuate service. (Doc. no. 13.)  The Court scheduled a hearing on the motion for reconsideration for August 19, 2010.  On August 16, 2010, Petitioners filed a notice of appeal.  On August 17, 2010, the Court canceled the hearing and placed the case in suspense pending Petitioners' appeal.

On December 28, 2010, the Third Circuit clerk informed the Petitioners, via letter, that their appeal would be stayed pending disposition of their motion for reconsideration pending before this Court.  On January 3, 2011, the Petitioners filed a Motion for Leave of Court to Approve the Filing of Supplemental

Motion for Reconsideration.  (Doc. no. 22.)

E*trade again responded in opposition on January 18, 2011, arguing that Petitioners' case should remain dismissed for failure to effectuate service. (Doc. no. 23.)  On February 1, 2011, the Court granted the Petitioners' Motion for Reconsideration. (Doc. nos. 11 & 22.)(finding that Petitioners' failed to appear due to a misunderstanding and that their failure to effectuate service was not due to their lack of diligence.)

     E.  <u>Efforts by the Court and the U.S. Marshals Service to Effectuate Service</u>

On February 23, 2011, the Court held a status and scheduling conference.  The Court inquired as to why service had yet to be effectuated upon E*Trade and determined that the U.S. Marshals Service would be asked to do it to ensure that it was finally done.  From the bench, the Court ordered E*Trade's local counsel to supply to the Court a name and address to be used for service on E*TRADE.

Connor and Marie Barbich, Esq. provided the name of E*TRADE's in-house counsel, John Bersin, and Mr. Bersin's business address at 905 Highland Point Drive, Suite 150, Roseville, CA 95678, the individual with whom Petitioners had been in communication with.  Following the hearing, the Court issued an order on February 24, 2011 instructing the Clerk of the Court to issue a summons and directing the U.S. Marshals Service

to serve a copy of the Petition on Mr. Bersin at the Roseville, California address.

Bersin alleges that on that same day and upon being advised of the Court's Order, he sent an email to the Roseville branch manager, Louis Hudson, informing him that the U.S. Marshals Service would soon be serving papers at the Roseville location.  Besin alleges that Hudson, in turn, copied Bersin on his email to his branch team informing them that legal documents would be served at the branch, and that he should be notified when the U.S. Marshal came to serve the documents.  Hudson left instructions for another person to accept service if he or Bersin were not at the branch when the U.S. Marshal came to serve the summons.

On April 14, 2011, Deputy U.S. Marshal Tim McCollum attempted service on E*Trade at the Roseville, California office. E*Trade's Roseville office is a branch office that services walk-in customers for one-on-one guidance.  At the front walk-up counter, McCollum identified himself as a Deputy U.S. Marshal. McCollum told the individual that he needed to know who would be the person to accept service.  He cannot recall if it was the person at the front desk or another employee that informed him that process needed to be served at different E*Trade sites depending on the location of the court.  The employee showed McCollum a list of locations and gave him the address of 2704

Commerce Drive, Harrisburg, Pennsylvania for service to be effectuated.

On May 5, 2011, service was attempted by the U.S. Marshals at the Harrisburg location given by E*Trade but also failed as this location was not a location where E*Trade could be served.[2]

F. First Rule to Show Cause Hearing Regarding E*Trade's Conduct

On June 15, 2011, the Court issued a Rule for E*TRADE to Show Cause (the "First Rule to Show Cause") why the Court should not impose sanctions upon E*TRADE and/or its counsel relating to the U.S. Marshals Service's inability to execute service at the locations provided by E*Trade, and set a hearing on the Rule to Show Cause for Friday, July 1, 2011.

On June 24, 2011, in response to the Court's First Rule to Show Cause, E*Trade's in-house counsel John Bersin submitted to the Court a declaration, stating that he has directed local counsel, Connor, to accept service for E*Trade as of a date set by the Court.

On July 1, 2011, the Court held the hearing on the

_____

[2]     In mid-June, 2011, E*Trade's outside counsel, Koenigsberg, called the U.S. Marshals Service and spoke with McCollum.  Koenigsberg asked if he knew the name of the person that he spoke with at E*Trade and asked for a description of the person.  However, McCollum advised him that he did not note the name of the person and that as he serves process on an almost daily basis he could not recall a description of that person.

First Rule to Show Cause why service had not been effectuated. At the hearing local counsel, Marie Barbich, Esq. of Christie, Pabarue, Mortensen & Young, PC (Conner's firm but Conner was not present) represented E*Trade.  Barbich apologized for a "misunderstanding," argued that E*Trade and Bersin's conduct was not "willful," and stated that "B[e]rsin has authorized Bill Connor and myself on behalf of E*Trade to accept service." Barbich also acknowledged that at the previous hearing she "represented [to Mr. Agnew] that a letter had been sent from national counsel, not from [her office], from national counsel saying that waiver would not be accepted -- or waiver would not be granted."

At the July 1, 2011 hearing, the Court found that service was then effectuated upon E*Trade, via local counsel, and therefore, the Court had personal jurisdiction over the Respondent and orally directed the entry of default against E*Trade for what appeared to be E*Trade's dilatory tactics in evading service of process.  The Court further ordered that a rule to show cause would issue and that a hearing to investigate E*Trade's actions in this case would be scheduled.


G. The Second Rule to Show Cause Hearing Regarding E*Trade's Conduct

On July 7, 2011, the Court issued a written Order directing the Clerk of the Court to formally enter default

against E*Trade in accordance with the Court's bench order.
Through that same Order, the Court directed E*Trade to Show Cause
(the "Second Rule to Show Cause") why: (1) Default Judgment
should not be entered against E*Trade; (2) E*Trade should not
have to reimburse the Agnews and the U.S. Marshals Service for
their costs in attempting to serve E*Trade; and (3) E*Trade's
in-house counsel, John Bersin, should not be referred to the
Office of the Chief Trial Counsel of the State Bar of California.

In a letter to the Court dated July 5, 2011, between
the hearing on the First Rule to Show Cause and the formal
issuance of the Second Rule to Show Cause, Connor, E*Trade's
local counsel, explained further that on the day that Deputy
McCollum indicated he attempted to serve the summons and
complaint, Bersin was on a business trip in Chicago, Illinois
attending a mediation.  The only other attorney in the Roseville
office was also at the same mediation.  Also, he stated that
April 14 is the day before tax day and, therefore, is the second
busiest walk-in day at the branch and, thus, there could have
been confusion surrounding the acceptance of service.

The Court held a hearing on the Second Rule to Show
Cause on August 22, 2011.  At the hearing, Bersin testified that
his declaration was truthful to his knowledge of what occurred on
April 14, 2011 when McCollum attempted service.  However, Bersin
offered no explanation for why E*Trade had failed to identify for

Petitioners how E*Trade could be properly served or had failed to respond at all to Petitioners' request for this information except to pass the case on to Mr. Kappas of Seyfarth & Shaw.

E*Trade offered no reason for failing to waive service and no explanation for why E*Trade refused to allow local counsel to accept service.  Nor did Bersin satisfactorily explain why the only action E*Trade had taken to ensure that the U.S. Marshal could effectuate service was to send an e-mail to a branch manager alerting him that at an unspecified time within the next three months a U.S. Marshal would be attempting service.  E*Trade also offered no explanation for why the U.S. Marshal, when attempting service at the Roseville branch office, was given the Harrisburg address which was also incorrect.

**III. DISCUSSION & CONCLUSIONS OF LAW**

For the reasons stated below, the Court will grant E*Trade's Motion to Set Aside Default, impose alternative sanctions upon E*Trade, and dissolve the Rule to Show Cause as to John Bersin.

A. Default Judgment/Setting Aside the Entry of Default

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment, and provides that "for good cause shown the court may set aside an entry of default."

Fed. R. Civ. Proc. 55(c).  In deciding whether to set aside an entry of default, the Court should consider the following four factors: (1) whether the defendant has a meritorious defense; (2) whether the plaintiff would be prejudiced by setting aside the default; (3) whether the default resulted from the defendant's own culpable conduct; and (4) whether alternative sanctions would be effective.  Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).  "[I]t is not necessary that all of the factors point toward a default before that sanction will be upheld."  Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 919 (3d Cir. 1992)(citing Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)).  A defendant's culpable conduct in allowing default can support the denial of a motion to set aside default.  Farnese v. Bagnasco, 687 F.2d 761 (3d Cir. 1982).

On the other hand, the Third Circuit Court of Appeals has recognized that "a standard of liberality should be applied in considering a motion to set aside a default."  Medunic v. Lederer, 533 F.2d 891, 894 (3d Cir. 1976).  Thus, "any doubt should be resolved in favor of the petition to set aside judgment so that cases may be decided on their merits."  Id. (citing, Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245-46 (3d Cir. 1951)); see also, Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable.").

The Court will now apply these four factors to this case ad seriatim.

First, E*Trade raises two meritorious defenses regarding the Court's subject matter jurisdiction over Petitioners' case as well as the merits of Petitioners' claim.

Second, due to E*Trade's conduct, Petitioners have been seriously prejudiced by the amount of effort and time spent in attempting to bring their claim in this Court.  However, despite E*Trade's conduct, the underlying merits of this case do not appear to be affected.

Third, the Court finds that E*Trade acted in bad faith, engaged in dilatory tactics, and engaged in willful misconduct that led directly to the default.  Petitioners, acting pro se, filed their claim on April 4, 2010, and yet service in this case was not effectuated until July 1, 2011.[3]  Although Petitioners worked with Bersin as E*Trade's representative during the arbitration hearing, Bersin did not accept or waive service once Petitioners sent the follow-up information he requested in his letter dated April 5, 2010.  Although Bersin stated that he had forwarded the case to Kurt A. Kappes, Esq. of Seyfarth Shaw, Bersin never advised Petitioners of the contact information of Kappes or that he had transferred the case to Kappas.

---

[3]     The time from July 19, 2010 to February 1, 2011 is not counted against E*Trade for this purpose, given that the Court placed the case in suspense while Petitioners appealed and later filed a motion for reconsideration.

Acting on behalf of E*Trade, Kappas never responded to Petitioners' letter either.  Kappas did not waive service, nor did he respond to Petitioners' request for E*Trade to identify how it could be served.  When Petitioners called E*Trade to attempt to determine who or what agency could accept service for E*Trade, no employee would provide this information.[4]  Also acting on behalf of E*Trade, Timothy B. Nelson of Seyfarth Shaw sent Petitioners a letter stating that once he was provided with appropriate service papers he would forward them to the appropriate party for service upon E*Trade, but never did, nor followed up on his offer.

In short, at no time did anyone from E*Trade, or the multiple law firms hired by E*Trade in this case, identify for Petitioners who could be effectively served for E*Trade.  This information is not available on E*Trade's website.  After at least four letters and one phone call, Petitioners were not able to obtain this information.

Even once E*Trade was ordered by the Court to provide an agent that could be served, on behalf of E*Trade, by the U.S. Marshals Service, E*Trade provided Mr. Bersin and his address as 905 Highland Point Drive, Suite 150, Roseville, CA 95678. E*Trade did not authorize local counsel to accept service or to

---

[4]     The Court's Deputy Clerk also attempted to ascertain this information by calling E*Trade.  However, even after identifying himself as representing the Court as well as multiple holds and transfers, he was not given this information.

waive service.  E*Trade did not identify its registered agent, Corporation Service Company ("CSC"), so that a receipt requested letter could have been sent to CSC.  See Fed. R. Civ. P. Rule 4(h), 4(e); Chapman v. Homecomings Fin. Servs., LLC, 2008 U.S. Dist. LEXIS 34392, *3-4 (E.D. Pa. Apr. 25, 2008) (Robreno, J.) (citing Pa. R. Civ. P. 404(2) & 403).

When the Marshal went to this location, he was told, what reportedly is told to anyone that inquires about service at this location, that for a "Pennsylvania case" service had to be made at 2704 Commerce Drive, Harrisburg, Pennsylvania.  A result that likely was, or should have been, predictable.  Although Bersin alleged that he had sent a memo to office employees regarding service for this case, it is not surprising that this memo may have been forgotten during the three month period that the Court had given the Marshals to effectuate service.

When the Marshal went to the Harrisburg location, he was not able to serve E*Trade at that location.  At no time until the hearing of August 22, 2011, did E*Trade identify for Petitioners, the Marshal, or the Court that E*Trade's registered agent is CSC.  Furthermore, CSC has not been located at 2704 Commerce Drive, Harrisburg, Pennsylvania for approximately one year.  E*Trade was giving information to those attempting service that was over six months old.

At no time before June 15, 2011, when the Court issued

- 16 -

a rule to show cause why E*Trade should not be sanctioned, did
E*Trade offer that local counsel could accept service even though
local counsel had entered his appearance on July 2, 2010.  At no
point did E*Trade offer to waive service.  E*Trade has not
offered any reason for insisting upon service at a particular
location or with a particular agent, while simultaneously giving
Petitioners, the U.S. Marshals, and the Court incorrect
information (or no information at all) as to how E*Trade could
effectively be served.  Under these circumstances, the Court
finds that E*Trade has intentionally engaged in a practice of
thwarting and frustrating service of process in this case.  Thus,
the default entered on July 7, 2011, was a direct result of
E*Trade's culpable conduct.

        The Court turns to the fourth factor and finds that
there are alternative sanctions available, including recovery of
costs and expenses, and the imposition of a financial sanction.
In balancing the four factors, the Court finds that one factor
weighs heavily against setting aside the entry of default as the
Court finds that E*Trade has engaged in the culpable conduct of
evading service through bad faith dilatory actions.  On the other
hand, three factors weigh in favor of setting aside the entry of
default as: E*Trade raises meritorious defenses; Petitioner's
substantive case has not been prejudiced; and there are
alternative sanctions to address E*Trade's culpable conduct.

- 17 -

Thus, the Court will grant Respondent's Motion to Set Aside Default because three of the four factors weigh in favor of setting aside the entry of default and because of the preference that cases be decided on the merits.

### B. Alternative Sanctions

Having found that it is more appropriate to impose alternative sanctions than to enter default judgment, the Court turns to the appropriate alternative sanctions for E*Trade's culpable conduct above that E*Trade has intentionally engaged in a practice of thwarting and frustrating service of process that the Court.[5]  An appropriate sanction will make Petitioners whole for the damage caused by E*Trade's culpable conduct, vindicate the Court's authority, and deter E*Trade from engaging in similar conduct in the future.

In determining an appropriate sanction, the Court considers: the seriousness of the sanctionable conduct, the damage to Petitioners caused by the conduct, the amount in controversy in the case, the Respondent's ability to pay, the effect of the conduct on the administration of justice, and any

---

[5]    Due process concerns are satisfied here because E*Trade has been put on notice that the Court wished to sanction its conduct relevant to service of process either by entering default against E*Trade in this case or by using alternative sanctions under the default analysis, and E*Trade had two opportunities to be heard during Rule to Show Cause hearings. See In re Taylor, – F.3d – , 2011 WL 3692440 (3d Cir. 2011).

legitimate justification Respondent offers for its conduct.

Here, the actions E*Trade took to evade service of process in this case are extraordinarily serious when considering the small amount of money involved in this case in comparison to E*Trade's business.  It is especially troubling that E*Trade, who is in the business of dealing directly with customers and whose appeal to the market is the ability to execute trades in the stock market without the need for a trained professional, appears to lack a policy for service of process that is clear and available to consumers.[6]

Petitioners, as well as the U.S. Marshals Service, spent money, time, and effort attempting to serve E*Trade. Petitioners made many phone calls, sent letters, and made many court appearances in an attempt to serve E*Trade and yet, fifteen months after filing their claim, are still at the beginning.

Further, the Court finds that the amount in controversy in the arbitration proceeding was approximately $30,000[7] making an appropriate alternative sanction should be less than $30,000

---

[6]     Mr. Agnew is an attorney, he has been retired for approximately 10 years.  Had Mr. Agnew been a pro se party with no legal background he may have given up when faced with E*Trade's dilatory tactics, making E*Trade's actions all the more troubling.  Although Mr. Agnew did not practice in the area of securities transactions, he had some understanding of the legal system.

[7]     This amount takes into account Petitioners' claimed damages, the amount awarded to E*Trade, and the arbitration fee Petitioners seek to recover.

so that the sanction is less severe than default judgment.  The
Court also finds that E*Trade has the ability to pay up to this
amount in sanctions.

Finally, E*Trade's conduct severely impacted the
administration of justice in this case as it is 15 months after
Petitioners' filed their claim and still the case has yet to
begin.  E*Trade's conduct wasted much of this Court's time and
efforts in reviewing papers, holding hearings, and issuing orders
all in an attempt to get this case started.  Most troubling, the
Court also finds that despite engaging at least half a dozen
lawyers to defend the case, E*Trade did not offer, at the hearing
or otherwise, any legal or practical reason for having engaged in
this conduct that has created extreme delay and much waste of
this Court's time and efforts.

For these reasons, the Court will impose upon E*Trade
the costs and expenses incurred by Petitioners and the U.S.
Marshal's Service in attempting to serve E*Trade, as well as a
financial sanction of $10,000 payable to the Court.


C. Referral of John Bersin

Although Bersin appears to be the lead attorney
responsible for coordinating service of process upon E*Trade, at
a minimum for all matters involving arbitration disputes, given
the disposition of this matter is against E*Trade itself, the

- 20 -

Court finds that no individual sanctions are warranted against Bersin.  The Court also finds that Bersin did not file a false declaration with the Court.  Accordingly, the Court now dissolves the Rule to Show Cause why John Bersin should not be referred for disciplinary purposes to the California State Bar.

**IV. CONCLUSION**

For the reasons stated above, the Court will grant Respondent's Motion to Set Aside Default, impose costs and expenses against E*Trade and further require E*Trade to pay to the Court $10,000 payable to the Court as a sanction for its conduct in this case.